James J. CONNOR, Petitioner, Appellant,

v.

Philip J. PICARD, Respondent, Appellee.

No. 7537.

United States Court of Appeals,
First Circuit.

Dec. 10, 1970.

James J. Twohig, Boston, Mass., for petitioner-appellant.

Lawrence P. Cohen, Asst.Atty.Gen., with whom Robert H. Quinn, Atty. Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief, Criminal Division, and Garrett H. Byrne, Dist. Atty., Suffolk County, were on brief, for respondent-appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

A Massachusetts grand jury indicted Donald Landry, three other named defendants, and "John Doe, the true name and a more particular description of the said John Doe being to the said jurors unknown," in connection with the killing of one Robert Davis. Subsequently petitioner Connor was found in Landry's apartment and arrested. On motion presented to the Superior Court by the district attorney, the following order was entered over petitioner's objection.[1] "Court having determined that the true name of John Doe has been discovered to be James J. Connor, orders the name of James J. Connor to be entered on the record." This procedure was authorized by a Massachusetts statute, Mass. G.L. c.

1. We make note of the objection because we are not to be taken as intimating that a Massachusetts defendant cannot waive what we herein hold is his right to be properly indicted.

277, § 19.[2] Petitioner was arraigned on the indictment. After unsuccessful attempts by him to inspect the grand jury minutes to ascertain whether there was evidence implicating him in the killing, the case went to trial and petitioner was convicted of first degree murder. His state appeal challenging, *inter alia,* the validity of the indictment, failed. Commonwealth v. Doherty, 1967, 353 Mass. 197, 229 N.E.2d 267 (two justices dissenting). He then brought a habeas corpus petition in the district court and, when he failed there as well, this appeal followed.

■ Petitioner did not present the constitutional question to the Massachusetts court in the particular focus in which this opinion is directed. We suggested it when the case reached us, and invited the Commonwealth to file a supplemental brief. Not unnaturally its first contention was to assert that petitioner had not exhausted his state remedy, citing Needel v. Scafati, 1 Cir., 1969, 412 F.2d 761, cert. denied 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 and Subilosky v. Commonwealth, 1 Cir., 1969, 412 F.2d 691. We find these cases inapposite. This opinion considers neither facts, as in *Needel,* nor precedent, an in *Subilosky,* that were not available to the Massachusetts court when petitioner was before it. Petitioner presented the court with "an opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." United States ex rel. Kemp v. Pate, 7 Cir., 1966, 359 F.2d 749, 751; *cf.* Wilbur v. Maine, 1 Cir., 1970, 421 F.2d 1327. That is enough to satisfy the requirements of the exhaustion of the doctrine. Sullivan v. Scafati, 1 Cir., 1970, 428 F.2d 1023, 1024 n. 1. We therefore turn to the merits.

■ The Commonwealth's initial brief asserts that "* * * properly viewed, petitioner's sole argument is no more than one that there was insufficient evidence before the grand jury showing that petitioner was Landry's accomplice. Such a claim, however, does not warrant judicial review. [Citations omitted.] There are sound policy reasons underlying the rule that an accused cannot challenge the sufficiency of the evidence before the grand jury." This misstates the issue. Petitioner is not challenging the validity of the grand jury determination. On the contrary, the grand jury itself has said that there was insufficient evidence to indict him, and we accept that as true. *See* Commonwealth v. Gedzium, 1927, 259 Mass. 453, 458, 156 N.E. 890. The question is whether, since the jury concededly did not find probable cause, petitioner has a constitutional complaint. We assume there is no general due process right to require that prosecution be preceded by an indictment. Lem Woon v. Oregon, 1913, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340; Hurtado v. California, 1884, 110 U.S. 516, 4 S.Ct. 292, 28 L.Ed. 232 see Beck v. Washington, 1962, 369 U.S. 541, 545, 82 S.Ct. 955, 8 L.Ed.2d 98 *cf.* Ocampo v. United States, 1914, 234 U.S. 91, 34 S.Ct. 712, 58 L.Ed. 1231. The issue is whether, in view of the extent to which Massachusetts affords this protection to others, the procedure by which petitioner was brought to trial deprived him of the Fourteenth Amendment's guarantee of equal protection of the laws.

The Massachusetts court has defined the requirements of the Commonwealth's Constitution.

"The great principle asserted by the Declaration of Rights is that no man shall be put to answer a criminal

---

2. "If the name of an accused person is unknown to the grand jury, he may be described by a fictitious name or by any other practicable description, with an allegation that his real name is unknown. An indictment of the defendant by a fictitious or erroneous name shall not be ground for abatement; but if at any subsequent stage of the proceedings his true name is discovered, it shall be entered on the record and may be used in the subsequent proceedings, with a reference to the fact that he was indicted by the name or description mentioned in the indictment." Mass.G.L. c. 277, § 19.

charge until the incriminating evidence has been laid before a grand jury, and they have found probable cause, at least, to believe the facts true on which the criminality depends."

Commonwealth v. Holley, 1855, 3 Gray 458, 459 (Shaw, Ch. J.).

Because of this requirement, Massachusetts indictments are, with the possible exception of the John Doe procedure, amendable only with respect "to matters of form and not as to matters of substance." Commonwealth v. Snow, 1930, 269 Mass. 598, 606, 169 N.E. 542, 545.[3] In sustaining the present statute in 1927, the Massachusetts court acknowledged that legislative authority to interfere with the protection of the grand jury system was limited to "minor detail or unessential formalities." Commonwealth v. Gedzium, ante, 259 Mass. at 459, 156 N.E. 890. It justified the procedure by stating, without elucidation, that the addition of the defendant's name was neither an amendment, nor completing an indictment "in blank." Id. at 457, 461, 156 N.E. 890.

We are not concerned with the soundness of the conclusion that the John Doe procedure is not in conflict with the Massachusetts Declaration of Rights, but we are concerned with its consequences. There can be no doubt as to the substantiality of the loss to a defendant of the protection afforded by a requirement that there must be an indictment before he can be brought to trial. The grand jury is "designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity." Ex parte Bain, 1887, 121 U.S. 1, 11, 7 S.Ct. 781, 786, 30 L.Ed. 849. Nor can we doubt that petitioner was denied that protection. Entering a defendant's name on the record could be termed a matter of form only if the grand jury had already sufficiently described him so that adding the true name was, in fact, only a formal matter.[4] Absent such identification, the court's assertion in Gedzium that there was no reason to suppose that the grand jury "did not have in mind a particular person," 259 Mass. at 460, 156 N.E. at 892, might, with due respect, be termed sophistical. Of course the jury had in mind a particular person, viz., the person who committed the crime. It had nothing in mind, however, to indicate the criminality, to use the court's word in *Holley,* of the petitioner. We must agree with the view of the dissenting justices in petitioner's case. See 353 Mass. at 216–218, 229 N.E.2d 267. Petitioner faced trial not as the result of a determination of his criminality by the grand jury, but because, relying on the special statutory procedure, the jury delegated this decision to others.[5]

---

3. Compare Commonwealth v. Cooper, 1928, 264 Mass. 378, 162 N.E. 733 (arson; words "wilfully and maliciously" cannot be added) and Commonwealth v. Snow, ante (extortion; identity of person threatened cannot be changed), with Commonwealth v. DiStasio, 1936, 294 Mass. 273, 1 N.E.2d 189 (murder; true name of victim designated as "John Doe" can be attached where indictment alleged date and place of commission of crime). *See also* Commonwealth v. Crotty, 1865, 10 Allen 403.

4. In Commonwealth v. Crotty, 1865, 10 Allen 403, the Massachusetts court suggested that if the document—there a warrant—although using a fictitious name, described the defendant's "occupation, his personal appearance and peculiarities, the place of his residence, or other circumstances by which he can be identified," it might be "sufficient to indicate clearly" who was intended. Id. at 405.

5. We may observe that under the Massachusetts John Doe practice not only is it never established that any newly discovered evidence relied upon by the prosecuting attorney in naming a defendant would have been sufficient to persuade the grand jury, there appears to be no obligation on his part to produce any

We come, then, to the question: whether there is adequate justification for the difference in treatment Massachusetts accords defendants like petitioner and those who are brought to trial on regular indictments. If the difference is to withstand constitutional scrutiny it must be based upon classifications which, at a minimum, are rationally related to a permissible state purpose. *See, e. g.,* Walters v. City of St. Louis, 1954, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660; Skinner v. Oklahoma ex rel. Williamson, 1942, 316 U.S. 535, 62 S.Ct. 1110, 86 L. Ed. 1655; Lindsley v. Natural Carbonic Gas Co., 1911, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369. The Commonwealth has suggested only one justification for its procedure. The court in *Gedzium* said, 259 Mass. at 461, 156 N.E. at 892–893,

> "[T]he grand jury ought not to be hampered in the performance of its duty because one, who ought to be indicted, has been able to screen his name, occupation and residence from general knowledge, to disguise his lineaments and peculiarities and to hide his personal appearance and his identifying characteristics so that no adequate discription of him can be given when his definite existence as a human being is disclosed and established."

Having in mind that in *Gedzium,* as here, there was no indication that the actor had used any form of disguise, the court's rhetoric is merely a euphemism for the absence of evidence. A more frank, though obviously less palatable, statement of its position would be that while, where the actor is known to the grand jury, he cannot be charged unless it finds the evidence against him sufficient; if he is not known because, like criminals generally, he has neglected to reveal his identity, this relieves the Commonwealth of the necessity of obtaining any grand jury finding of cause.

As a basis for classification, the *Gedzium* rationale is not even minimally persuasive. Even if it should appear that the actor made a deliberate attempt to "hamper" the grand jury, to say that conduct on his part justifies the denial of customary rights to whatever person the prosecuting attorney might thereafter choose as a defendant bridges the very question at issue. One might equally say that a robbery defendant should not be allowed to assert inability to afford counsel in view of all the money he stole.

We see no end served by the statute except prosecutorial convenience. However, the Commonwealth properly does not argue that the mere fact that, for no definable reason—whether deliberate, fortuitous, or inadvertent—it sought an indictment before it had sufficient basis for one, should relieve it of the necessity of returning to the grand jury when it had a better case. As a ground for distinguishing between defendants, this is clearly inadequate. *See* Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1081 (1969).

With all deference, the Massachusetts court has approved a procedure similar to the one it condemned in Commonwealth v. Crotty, n. 4 ante, as comparable to the detested pre-Revolutionary general warrant. It is no better merely because the delegation was made by a grand jury rather than by a magistrate. In the light of the Commonwealth's otherwise universal commitment to grand jury indictments in felony cases, we must conclude that the arbitrary decision to make such a delegation in petitioner's case was constitutionally impermissible discrimination.

The judgment of the district court dismissing the petition is vacated. The case is remanded with instructions to grant the writ unless, within a reasonable time set by the district court, the petitioner is indicted by the Commonwealth.

---

new evidence at all. So far as the statute provides, he is apparently at liberty merely to conclude that the grand jury was over-cautious in rejecting what he originally presented.