UNITED STATES of America ex rel.
Clyde CURTIS, NYSIIS (DCl)
0715491P, Petitioner,

v.

WARDEN OF GREEN HAVEN PRISON,
Respondent.

No. 70 C 1069.

United States District Court,
E. D. New York.

July 13, 1971.

Arlene R. Silverman, New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, of counsel), for respondent.

John J. Hart, New York City, for relator Clyde Curtis.

## MEMORANDUM and ORDER

DOOLING, District Judge.

The relator was tried and convicted in the County Court, Suffolk County, of criminally selling a dangerous drug, second degree (Count 1), and of possession of a dangerous drug, second degree (Count 2). He contends, as he did in the County Court (except when the alleged indictment was amended during the arraignment) that he has been denied due process because he was never in fact indicted for the crime on which he was

convicted notwithstanding that the Constitution of New York, Article I, Section 6, provides that no man can be held to answer for an infamous crime unless on indictment of a Grand Jury.

The indictment on which relator was convicted charged Henry "Doe" with having sold the narcotic drug and with having possessed it. The indictment was in the standard printed form and it contained no description of Henry "Doe." Two of the three detectives who had worked on the case testified before the Grand Jury; one testified to making the purchase, the other to observing him making it; neither detective supplied the Grand Jury with any description of the relator. The undercover detective, who allegedly bought the narcotic, testified of the vendor:

Q Do you know his name?

A First name only, Henry.

Q Have you as of yet learned the identity (*sic*) of his last name?

A No sir I haven't.

Q Not as of today?

A No sir.

Hence, as Judge Lundberg pointed out in his Memorandum Decision on the point after trial, in form at least the indictment could have been the basis for the issuance of a warrant in the same form, and it could have been served on anyone in the world. Section 277 of the Code of Criminal Procedure—which says that, "If a defendant is indicted by a fictitious or erroneous name" his true name, when discovered, "may be inserted in the subsequent proceedings, referring to the fact of his being indicted by the name mentioned in the indictment"—Section 277 does not, plainly, relax the constitutional requirement but reinforces it, while making allowance for correction of mere misnomer, etc.

It appears from the testimony of the three detectives involved, both during the *Wade* hearing, at the trial, and, although in a very much telescoped form, in the Grand Jury proceeding, that the police knew the narcotic vendor as a specific identifiable person; they did not know his name at the time and place when he made the sale to the undercover detective but a fairly good description was then written down, although it was not a description that uniquely fitted the defendant or any other man. The narcotic vendor seems to have been the subject of a surveillance that had started earlier; he had been seen at the same place where he made the sale to the undercover detective or thereabouts on earlier occasions by at least two of the three detectives who were on the team. He was not at once arrested when he made the sale to the undercover detective because, apparently, the police wanted to use the undercover detective in further efforts before he became too well known.

At the time that the sale was made the detectives understood the narcotic vendor to be known as "Henry", and it will be noticed that the typewritten indictment entitlement treats Henry as a real name and only "Doe" as fictitious. Although they did not tell this to the Grand Jury, they also thought that the narcotic vendor was the cousin of a person called Singletary; for all that appears he may be, for there has been no further testimony on that point. But, although the detectives did not know the narcotic vendor's name until they found it out later (by some means that was not probed either at the *Wade* hearing or at the trial), the detectives knew the man from whom the undercover detective had bought the narcotic, they knew him by his appearance. When they learned later that the name of the vendor was Clyde Curtis and still later saw that name turn up on a list of unrelated arrests, they went to the place of detention, verified that Clyde Curtis was their narcotic vendor Henry "Doe," and thereupon executed upon him the warrant that had been issued against Henry "Doe." So much the County Judge and the trial jury could find from the evidence, and, indeed, must have found.

Judge Lundberg would nevertheless have dismissed the indictment even after trial, had he not been satisfied from the

trial evidence of identification, treating it as extrinsic evidence, that he did not have to do so. While his Memorandum Decision is cryptic, Judge Lundberg was evidently of the view that the Grand Jury had in fact indicted a specific "someone" within the meaning of People v. Bogdanoff, 1930, 254 N.Y. 16, 29–31, 171 N.E. 890, and United States ex rel. Morrison v. Foster, 2d Cir. 1949, 175 F.2d 495, 497.

■ Plainly if relator was denied the indictment protection which all other accused persons are afforded under New York constitutional and statutory law he has a due process claim. It is immaterial that New York could, constitutionally, abandon all indictment procedures; it has retained them as mandatory elements of due process in its criminal procedures, and it cannot arbitrarily deny them to one man and grant them to all others, for they are, at minimum, procedural rights of substance. See Connor v. Picard, 1st Cir. 1970, 434 F.2d 673, 674–675. The critical questions, then, are two: *first,* was the relator Clyde Curtis the person whom the Grand Jury indicted, and *second,* may that fact be shown by extrinsic or "extraneous" evidence where neither the descriptive matter in the indictment, nor the testimony presented to the Grand Jury taken with the form of the indictment, suffices unaided to identify the accused person.

Judge Learned Hand in United States ex rel. Mouquin v. Hecht, 2d Cir. 1927, 22 F.2d 264, 265 noted that

> "The jurors do not indict the man who committed the crime, but him described in the evidence before them. * * * They are to be understood, therefore, as indicting the persons described in the testimony, if doubt arises. Hence, if it be shown that the witnesses described the person arrested, he is the person indicted."

In the present case the evidence presented to the Grand Jury did not amount to saying to them that the detectives did not know who the alleged criminal was. On the contrary, while they did not supply a physical description of the narcotic vendor to the Grand Jurors, the clear general sense of their testimony is that they were asking the Grand Jury to indict the particular vendor who was known to them only by the name Henry. They sought an indictment of a specific man not an unknown perpetrator of a known crime. Hence the first question can be answered with confidence, if Clyde Curtis is the narcotic vendor: the Grand Jury was asked to and intended to indict, the specific narcotic vendor who was called Henry, whose true name was unknown, but who (as Court and jury each found) was named Clyde Curtis. It would be correct to say that his identity was disclosed to the Grand Jury and only his legal name was unknown.

■ To allow such indictments has been thought to involve so great a danger of abuse that indictments have been set aside where only a word or two of extrinsic testimony appeared to be needed to clear up what was rather a seeming indefiniteness than an actually indefinite indictment equivalent in uncertainty and generality to the jury's indicting a person totally unknown and as yet unconnected by any known evidence with the offense. Duffy v. Keville, D.Mass. 1926, 16 F.2d 828; United States v. Doe, N.D.Cal.1904, 127 F. 982; *cf.* Connor v. Picard. *supra,* 434 F.2d at 676. Contrast People v. Erving, 1961, 189 Cal.App.2d 283, 284–285, 290, 11 Cal. Rptr. 203 (description and first name included in "Jane Doe" indictment). The law of New York, however, does not require that the means of demonstrating that the indictment is in fact genuinely an indictment of a particular, intended person be contained on the face of the indictment itself. *Bodganoff, supra,* read *Mouquin* as holding that "an accused cannot avail himself of a plea that he is held without indictment, where the description of his person was insufficient, to identify him as the person accused, till extraneous proof supplied the deficiency." And *Bogdanoff* cites Commonwealth v. Gedzium, 1927, 259 Mass.

453, 156 N.E. 890, for the proposition that "where a defendant has been indicted under a fictitious name because his true name was unknown, the true name may be inserted whenever discovered." *Gedzium*, although plainly vulnerable to Chief Judge Aldrich's criticism in Connor v. Picard, *supra*, 434 F.2d at 674–675, sustained the indictment it dealt with on the view that (156 N.E. at 892), "The indictment cannot rightly be construed in the circumstances here disclosed as an indictment in blank, usable at will against any member of the community." *Bogdanoff* phrased its dictum on the issue thus: "Though extraneous evidence be necessary to identify a defendant, insufficiently or erroneously described in the indictment, it seems clear that an accused cannot claim that he is held without indictment where such evidence proves that he is the person the grand jury intended to accuse, and the record is amended accordingly."

 That extrinsic evidence must not simply be evidence which brings home to a man later fixed upon only by further police investigation of the crime an utterly general charge earlier made against whoever committed the crime and based on evidence that showed no more than that a crime had been committed by a person or persons unknown. In such a case there is no evidence against the ultimately chosen defendant before the Grand Jury; there is simply evidence that an offense has been committed. But the extrinsic or "extraneous" evidence referred to is either evidence before the Grand Jury or evidence which must be (a) in existence, (b) known to the Grand Jury witnesses at the time they went before the Grand Jury and gave the evidence on the basis of which the indictment was found, and (c) evidence integral with although not an articulated part of the evidence given to the Grand Jury so that, had the Grand Jurors pursued identification data with questions, adequately descriptive matter that could make the indictment on its face unique in its application to the intended defendant could have been presented to the Grand Jury and, if good practice required it, could give rise to descriptive phrases for incorporation into the indictment itself instead of using such an abrupt designation as Henry "Doe."

 That appears to be the case here. By the time the two detectives went before the Grand Jury they had not only seen the narcotic vendor on, apparently, two occasions before the sale, but on one or two occasions after it, and they had a contemporaneously written-down description of him which, while fairly general in terms, would, taken with the other data, have sufficed to remove uncertainty of description. See United States ex rel. Morrison v. Foster, 2d Cir. 1949, 175 F.2d 495, 497.

When the defendant was arraigned, in form at least the "Indictment and all proceedings herein" were amended on motion of the Assistant District Attorney "to read as follows: HENRY 'DOE', a/k/a CLYDE CURTIS," but that was done while the defendant was without counsel, and, apparently, only thereafter was counsel appointed, the reading of the indictment waived and the plea of not guilty entered.

While it is considered that the point is not a valid one, and it may not survive conviction by the petit jury (United States ex rel. Morrison v. Foster, *supra*, 175 F.2d at 498), in view of the decision in the First Circuit and the meagerness of the state law on the question, if the relator elects to appeal, a certificate of probable cause will be granted.

It is accordingly

Ordered that the petition for writ of habeas corpus is dismissed and the writ is denied.