# PICARD *v.* CONNOR

No. 70–96.  Argued November 17, 1971—Decided December 20, 1971

*John J. Irwin, Jr.,* Assistant Attorney General of Massachusetts, argued the cause for petitioner.  With him on the brief were *Robert H. Quinn,* Attorney General,

*Ruth I. Abrams* and *Charles E. Chase,* Assistant Attorneys General, and *Garrett H. Byrne.*

*James J. Twohig,* by appointment of the Court, 402 U. S. 993, argued the cause and filed a brief for respondent.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The Court of Appeals for the First Circuit, reversing the District Court's dismissal of respondent's petition for a writ of federal habeas corpus,[1] held that "the procedure by which [respondent] was brought to trial deprived him of the Fourteenth Amendment's guarantee of equal protection of the laws." 434 F. 2d 673, 674 (1970). The Court of Appeals acknowledged that respondent had not attacked his conviction on the equal protection ground, either in the state courts or in his federal habeas petition:

> "[Respondent] did not present the constitutional question to the Massachusetts court in the particular focus in which this opinion is directed. We suggested it when the case reached us, and invited the Commonwealth to file a supplemental brief. Not unnaturally its first contention was to assert that [respondent] had not exhausted his state remedy . . . ." *Ibid.*

The Court of Appeals rejected that contention and held that respondent had exhausted available state judicial remedies, as required by 28 U. S. C. § 2254,[2] because he

---

[1] 308 F. Supp. 843 (Mass. 1970).

[2] Title 28 U. S. C. § 2254 provides in pertinent part:

"(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is

had "presented the [state] court with 'an opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim.' " *Ibid.* We granted certiorari to consider that ruling in light of the command of § 2254. 402 U. S. 942 (1971). We hold that the State's objection should have been sustained, and we therefore reverse for further proceedings, see *Slayton* v. *Smith, ante,* p. 53, without reaching the merits of the constitutional question decided by the Court of Appeals.[3]

A Massachusetts grand jury returned an indictment for murder against Donald Landry "and John Doe, the true name and a more particular description of the said John Doe being to the said Jurors unknown." After respondent's arrest, the indictment was amended in a proceeding pursuant to a fictitious-name statute, Mass. Gen. Laws Ann., c. 277, § 19,[4] to substitute respond-

_____

either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

[3] Respondent does not contend that there are no available state judicial remedies through which he can present the equal protection claim. It appears that Massachusetts provides postconviction procedures adequate to adjudicate that claim, either by motion for a new trial, Mass. Gen. Laws Ann., c. 278, § 29; see *Earl* v. *Commonwealth,* 356 Mass. 181, 248 N. E. 2d 498 (1969), or by writ of error, Mass. Gen. Laws Ann., c. 250; see *Cortellesso* v. *Commonwealth,* 354 Mass. 514, 238 N. E. 2d 516 (1968); *Crowell* v. *Commonwealth,* 352 Mass. 288, 225 N. E. 2d 330 (1967); *Shoppers' World, Inc.* v. *Board of Assessors,* 348 Mass. 366, 376 n. 9, 203 N. E. 2d 811, 819 n. 9 (1965).

[4] "If the name of an accused person is unknown to the grand jury, he may be described by a fictitious name or by any other practicable description, with an allegation that his real name is unknown. An indictment of the defendant by a fictitious or erroneous name shall

ent's name for "John Doe." The Massachusetts Supreme Judicial Court affirmed respondent's subsequent conviction, *sub nom. Commonwealth* v. *Doherty,* 353 Mass. 197, 229 N. E. 2d 267 (1967). Among other grounds of appeal, respondent challenged the legality of the indictment. The gist of respondent's argument, which he also asserted during various trial proceedings, was that the amending procedure did not comply with the statute as construed by the Massachusetts courts, with the result that he had not been lawfully indicted for the crime. See *Commonwealth* v. *Gedzium,* 259 Mass. 453, 156 N. E. 890 (1927).[5] The only suggestions of a claimed denial of a federal right were statements in respondent's brief questioning the continuing validity of the holding in *Gedzium* that the provision of the Fifth Amendment that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury" was inapplicable to the States. *Id.,* at 457, 156 N. E., at 891; see *Hurtado* v. *California,* 110 U. S. 516 (1884).[6] We have examined the

---

not be ground for abatement; but if at any subsequent stage of the proceedings his true name is discovered, it shall be entered on the record and may be used in the subsequent proceedings, with a reference to the fact that he was indicted by the name or description mentioned in the indictment."

[5] Although the Massachusetts Constitution does not expressly provide for grand jury indictments, the Massachusetts courts have construed Art. XII of the Declaration of Rights to require that " 'no person . . . shall be held to answer for a capital or otherwise infamous crime . . . unless he shall have been previously charged on the presentment or indictment of a grand jury.' " *Jones* v. *Robbins,* 74 Mass. 329, 344–345 (1857).

[6] In arguing his first assignment of error:

"[T]he dismissal in the *Gedzium* case of the applicability of the Fifth Amendment provision . . . would appear to be in need of reexamination, in the light of the development by the United States

pretrial, trial, and appellate papers and do not discover any indication of an attack upon the prosecution under the indictment as violative of the Equal Protection Clause of the Fourteenth Amendment.[7]

Supreme Court . . . of the doctrine of applicability of guarantees of the Federal Bill of Rights to the states by virtue of the Fourteenth Amendment." Brief for Connor in the Massachusetts Supreme Judicial Court 13.

In arguing his third and fourth assignments of error:

"As set forth *supra* in the argument in support of the first Assignment, the indictment of 'John Doe' was a nullity because it was a general indictment, not limited to any identifiable individual. Since this is a capital case, the defendant Connor was prosecuted in violation of his constitutional right to due process in that he was put to trial without having been indicted by a Grand Jury." *Id.*, at 14.

[7] Nor did respondent's federal habeas petition assert a denial of equal protection. The petition alleges that "[h]e was brought to trial without indictment or presentment in violation of the Fifth Amendment and of the Massachusetts Constitution, . . . [of] the statutory provisions of [the fictitious-name statute], and of the rule of the common law that an indictment in a capital case . . . forbids any amendment to such an indictment." In his memorandum in support of the petition, respondent argued that the Massachusetts indictment procedure "must be administered in accordance with the principles pertaining to the Grand Jury as established by the law of the land, i. e., in accordance with due process as created by the common law and adopted by our Constitution. . . . In accordance with these principles, since the indictment did not name nor describe [respondent], it was, as to him, a nullity, and remained so after amendment." The District Court, noting that respondent had "argued indiscriminately on the basis of the statutes and constitution of the Commonwealth of Massachusetts, as well as upon federal grounds," 308 F. Supp., at 845 n. 2, considered respondent's contention to be "that the amendment of the indictment to substitute Connor's name for John Doe was a violation of the Fifth Amendment." The court rejected that contention on the ground "that the due process clause of the Fourteenth Amendment does not make applicable to the states the grand jury requirement of the Fifth Amendment." *Id.*, at 845.

It has been settled since *Ex parte Royall,* 117 U. S. 241 (1886), that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus. See, *e. g., Nelson* v. *George,* 399 U. S. 224, 229 (1970); *Irvin* v. *Dowd,* 359 U. S. 394, 404–405 (1959); *Ex parte Hawk,* 321 U. S. 114 (1944). The exhaustion-of-state-remedies doctrine, now codified in the federal habeas statute, 28 U. S. C. §§ 2254 (b) and (c),[8] reflects a policy of federal-state comity, *Fay* v. *Noia,* 372 U. S. 391, 419–420 (1963); *Bowen* v. *Johnston,* 306 U. S. 19, 27 (1939), "an accommodation of our federal system designed to give the State the initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Wilwording* v. *Swenson, ante,* p. 249, at 250. We have consistently adhered to this federal policy, for "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Darr* v. *Burford,* 339 U. S. 200, 204 (1950) (overruled in other respects, *Fay* v. *Noia, supra,* at 435–436). It follows, of course, that once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. See, *e. g., Wilwording* v. *Swenson, supra,* at 250; *Roberts* v. *LaVallee,* 389 U. S. 40, 42–43 (1967); *Brown* v. *Allen,* 344 U. S. 443, 447–450 (1953).

We emphasize that the federal claim must be fairly presented to the state courts. If the exhaustion doctrine is to prevent "unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution," *Ex parte Royall, supra,* at 251, it is not sufficient merely that the federal habeas applicant has

[8] See n. 2, *supra.*

been through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. See *Darr* v. *Burford, supra,* at 203; *Davis* v. *Burke,* 179 U. S. 399, 401–403 (1900).

Respondent challenged the validity of his indictment at every stage of the proceedings in the Massachusetts courts. As the Court of Appeals pointed out, 434 F. 2d, at 674, this is not a case in which factual allegations were made to the federal courts that were not before the state courts, see, *e. g., United States ex rel. Boodie* v. *Herold,* 349 F. 2d 372 (CA2 1965); *Schiers* v. *California,* 333 F. 2d 173 (CA9 1964), nor a case in which an intervening change in federal law cast the legal issue in a fundamentally different light, see, *e. g., Blair* v. *California,* 340 F. 2d 741 (CA9 1965); *Pennsylvania ex rel. Raymond* v. *Rundle,* 339 F. 2d 598 (CA3 1964). We therefore put aside consideration of those types of cases. The question here is simply whether, on the record and argument before it, the Massachusetts Supreme Judicial Court had a fair opportunity to consider the equal protection claim and to correct that asserted constitutional defect in respondent's conviction. We think not.

Until he reached this Court,[9] respondent never contended that the method by which he was brought to trial

---

[9] The decision of the Court of Appeals prompted respondent, for the first time in any court, to advance the argument in this Court that "since indictment is the only process provided for the finding of probable cause in Massachusetts prior to trial, its denial in

denied him equal protection of the laws. Rather, from the outset respondent consistently argued that he had been improperly indicted under Massachusetts law and, to the extent he raised a federal constitutional claim at all, that the indictment procedure employed in his case could not be approved without reference to whether the Fifth Amendment's requirement of a grand jury indictment applied to the States. He adverted to the Fourteenth Amendment solely as it bore upon that submission.[10] The equal protection issue entered this case only because the Court of Appeals injected it.

We are thus unable to agree with that court that respondent provided the Massachusetts "court with 'an opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim.' " 434 F. 2d, at 674. To be sure, respondent presented all the facts. Yet the constitutional claim the Court of Appeals found inherent in those facts was never brought to the attention of the state courts. The Supreme Judicial Court dealt with the arguments respondent offered; we cannot fault that court for failing also to consider *sua sponte* whether the indictment procedure denied respondent equal protection of the laws. Obviously there are instances in which "the ultimate question for disposition," *United States ex rel. Kemp* v. *Pate,* 359 F. 2d 749, 751 (CA7 1966), will be the same despite variations in the legal theory or factual allegations urged in its support. A ready example is a challenge to a confession predicated upon psychological as well as physical coercion. See *Sanders* v. *United States,* 373 U. S. 1, 16 (1963). Hence,

Connor's case alone was undoubtedly a violation of Connor's federal rights not only as to due process, but also equal protection, under the Fourteenth Amendment, as stated by the Chief Judge of the Circuit Court." Brief for Respondent 15.

[10] Respondent reiterated these contentions in his federal habeas petition. See n. 7, *supra.*

we do not imply that respondent could have raised the equal protection claim only by citing "book and verse on the federal constitution." *Daugharty* v. *Gladden,* 257 F. 2d 750, 758 (CA9 1958); see *Kirby* v. *Warden,* 296 F. 2d 151 (CA4 1961). We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts. The claim that an indictment is invalid is not the substantial equivalent of a claim that it results in an unconstitutional discrimination. See *Rose* v. *Dickson,* 327 F. 2d 27, 29 (CA9 1964); *Morris* v. *Mayo,* 277 F. 2d 103 (CA5 1960). The judgment of the Court of Appeals is therefore reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE DOUGLAS, dissenting.

With all respect, I think that in this case we carry the rule of exhaustion of state remedies too far. Connor's name was added to the indictment after it was returned by the state grand jury, he being substituted for "John Doe." He raised in his brief before the Supreme Judicial Court of Massachusetts his claim that such a substitution denied him that quantum of due process required by the Fourteenth Amendment "in that he was put to trial without having been indicted by a Grand Jury."[1] He did not refer to the Equal Protection Clause which is also a part of the Fourteenth Amendment. But that is a nicety irrelevant to the maintenance

---

[1] The Court properly says that respondent tendered the validity of *Commonwealth* v. *Gedzium,* 259 Mass. 453, 156 N. E. 890, to the Supreme Judicial Court of Massachusetts. That, however, was in his first assignment of error. But in his third and fourth assignments of error he alleged that he was prosecuted "in violation of his constitutional right to due process in that he was put to trial without having been indicted by a Grand Jury."

of healthy state-federal relations on which the Court makes the present decision turn. The concept of due process is broad and expansive, and "the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive." *Bolling* v. *Sharpe,* 347 U. S. 497, 499. We have thus held that the denial of equal protection, *viz.,* invidious discrimination, may be "so unjustifiable as to be violative of due process." *Ibid.*[2] As MR. JUSTICE BRENNAN said in *Boddie* v. *Connecticut,* 401 U. S. 371, 388 (concurring opinion), "The question that the Court treats exclusively as one of due process inevitably implicates considerations of both due process and equal protection." That is likewise true here.

Moreover, a due process point is plainly raised where an accused claims that no grand jury found "probable cause" to indict him, that its only finding concerned someone unknown at the time.

If Connor had complained of a coerced confession, or of perjured testimony, and the facts on which he relied

---

[2] The overlap is, of course, not total. *Bolling* v. *Sharpe,* 347 U. S. 497, 499. But the extent to which the two concepts merge has been a subject of debate since Representative John A. Bingham of Ohio, an architect of the Fourteenth Amendment, used the phrases "due process" and "equal protection" interchangeably on the floor of Congress. Cong. Globe, 39th Cong., 1st Sess., 1088–1089. See, *e. g.,* Wilson, The Merging Concepts of Liberty and Equality, 12 Wash. & Lee L. Rev. 182, Antieau, Equal Protection Outside the Clause, 40 Calif. L. Rev. 362, Tussman & tenBroek, The Equal Protection of the Laws, 37 Calif. L. Rev. 341. Compare *Douglas* v. *California,* 372 U. S. 353, and *Griffin* v. *Illinois,* 351 U. S. 12, with *Gideon* v. *Wainwright,* 372 U. S. 335, and *Powell* v. *Alabama,* 287 U. S. 45.

There is apparently a similar controversy in India, whose constitution also contains both a due process and equal protection clause. See, *e. g.,* Narain, Equal Protection Guarantee and the Right of Property Under the Indian Constitution, 15 Int. & Comp. L. Q. 199.

were developed in the state court, the constitutional questions would surely have been sufficiently raised without reference to the precise constitutional provisions involved. The situation here is no different.[3]

---

[3] *Daugharty* v. *Gladden,* 257 F. 2d 750 (CA9), which the Court cites, is instructive. Daugharty was an indigent state prisoner. He appealed the denial of state habeas corpus to the intermediate state appellate court, but that court dismissed the appeal because Daugharty could not afford to supply an appellate transcript. He then moved the state supreme court for an order requiring that he be supplied a transcript free of charge, and when that motion was denied, sought federal habeas corpus. The District Judge denied the application for a writ on the grounds Daugharty had failed to exhaust state remedies. Despite the fact that Daugharty never even mentioned the Fourteenth Amendment, much less the Equal Protection Clause, the Court of Appeals held that his motion in the state supreme court satisfied the exhaustion requirement.

"In moving the Oregon Supreme Court for an order requiring that a transcript be supplied without expense to him, Daugharty called attention to his inability to pay for such a record. This provided that court with all of the facts necessary to give application to the constitutional principle upon which appellant relies. . . . [E]xhaustion of state remedies is not to be denied because the Fourteenth Amendment was not specifically mentioned." *Id., at* 758.

Analogously, the Court of Appeals said in the instant case:

"Petitioner did not present the constitutional question to the Massachusetts court in the particular focus in which this opinion is directed. We suggested it when the case reached us, and invited the Commonwealth to file a supplemental brief. Not unnaturally its first contention was to assert that petitioner had not exhausted his state remedy, citing Needel v. Scafati, 1 Cir., 1969, 412 F. 2d 761, cert. denied 396 U. S. 861, . . . and Subilosky v. Commonwealth, 1 Cir., 1969, 412 F. 2d 691. We find these cases inapposite. This opinion considers neither facts, as in *Needel,* nor precedent, as in *Subilosky,* that was not available to the Massachusetts court when petitioner was before it. Petitioner presented the court with 'an opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim.' United States ex rel. Kemp v. Pate, 7 Cir., 1966, 359 F. 2d 749, 751; *cf.* Wilbur v. Maine, 1 Cir.,

The judges to whom that issue of law is tendered are learned men who we must assume are knowledgeable as to the meaning of due process. A law student who tendered a brief that left due process at large would certainly not be worthy of an "A." But the nicety of analysis which we associate with scholarship has no functional role to play in this area of exhaustion of state remedies. When we go to that extreme, we make a trap out of the exhaustion doctrine which promises to exhaust the litigant and his resources, not the remedies.

I fear that our reluctance to backstop the Court of Appeals in the present case is symptomatic of this Court's trend to sidestep all possible controversies so, as it hopes, to let them disappear. Of course we should remit a litigant to his state tribunal if facts have emerged which were not known at the time of the trial or if intervening decisions have outdated the earlier state decision. No such situation exists here. The facts are simple and uncontested: Connor's name was substituted for John Doe after the indictment was returned. The point of law is clear now and will be no clearer on the remand. Its vulnerability tested by due process was as obvious when the case was before the Supreme Judicial Court of Massachusetts as it now is. I think the Court of Appeals acted responsibly in ruling on it. We should decide the merits here and now. Endless repetitive procedures are encouraged by today's ruling on exhaustion of remedies. I would bring this litigation to an end today by applying the exhaustion-of-remedy rule to terminate rather than multiply procedures that now engulf the state-federal regime.

---

1970, 421 F. 2d 1327. That is enough to satisfy the requirements of the exhaustion . . . doctrine. Sullivan v. Scafati, 1 Cir., 1970, 428 F. 2d 1023, 1024 n. 1. We therefore turn to the merits." 434 F. 2d 673, 674.