■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. LONNIE LESTER GIBBS, Appellant, v LEON J. VINCENT, as Superintendent, Green Haven Correctional Facility, Respondent.—In a habeas corpus proceeding, petitioner appeals from a judgment of the County Court, Rockland County, entered December 4, 1974, which dismissed the proceeding. Judgment affirmed, without costs. Whether the Court of Appeals did or did not consider the Fifth and Sixth Amendments, as constitutional questions raised, should be left to that court to decide. Hopkins, Acting P. J., Latham and Brennan, JJ., concur; Shapiro, J., dissents and votes to reverse and to direct petitioner's discharge, with the following memorandum: On April 4, 1966 the body of one Archie Loper was found in a parking lot in Spring Valley, New York. Loper had been stabbed to death. The police arrested Saul Navarro (the friend and roommate of petitioner Gibbs) in connection with the murder. Gibbs was taken to the Spring Valley police station for questioning in connection with Loper's death. On April 5, 1966, he was taken before an acting Police Justice who ordered him confined as a material witness—a confinement which lasted until April 28, when he was indicted for the murder. On April 7, 1966, after he was allowed to speak to his girlfriend (who had previously spoken with the police), Gibbs led the police to a vacant lot where a small knife was found. Gibbs asserted that

this knife belonged to Navarro and that it was the murder weapon. On April 28, 1966, Gibbs was indicted for murder. Thus, from April 4 through April 28, he was held without the assistance of counsel and was not informed that he was entitled to counsel. On June 28, 1966, prior to the trial, Gibbs' trial counsel brought on a motion seeking to enjoin the People from introducing at the trial the knife and certain statements made by him —alleging that Gibbs' illegal and unconstitutional detainment compelled him to lead the police to the knife. The Trial Judge refused to so enjoin the People. Motions made on the same grounds during the trial were also denied. On his appeal to this court, Gibbs raised no contention concerning any infringement of his constitutional rights. He argued before this court (1) that the verdict convicting him of murder in the second degree was contrary to the weight of the evidence and (2) that prejudicial error was allegedly committed by the trial court's limitation of his examination of the People's witnesses concerning the administering of a lie detector test to him. On July 7, 1969 this court, without opinion, unanimously affirmed his conviction. On November 17, 1971 the Court of Appeals, without opinion, upheld Gibbs' conviction *(People v Gibbs,* 32 AD2d 1028, affd 29 NY2d 754). In the Court of Appeals Gibbs argued, *inter alia,* that the *illegality of his detention* rendered any statements he made and the fruits of such statements inadmissible. He also argued that he *"was held without benefit of counsel and was not given any warning as to his right to counsel"* (Gibbs' brief to the Court of Appeals [emphasis supplied]). Although the landmark *Miranda* case, decided on June 13, 1966 *(Miranda v Arizona,* 384 US 436), was applicable to trials begun after that date (here the trial began in September, 1966), that decision was not cited by Gibbs in his brief before the Court of Appeals. After the New York Court of Appeals upheld Gibbs' conviction, he petitioned the United States District Court for the Southern District of New York for a writ of habeas corpus. On May 12, 1972, the Honorable Lee P. Gagliardi denied the petition without a hearing. Thereafter, a certificate of probable cause was issued by the District Court and the Legal Aid Society was assigned, pursuant to the Criminal Justice Act, to represent petitioner. In the course of preparing the appeal, the Legal Aid Society discovered that the record presented to the District Court by the State lacked several documents which were material to the issues petitioner had raised and to the District Court's disposition of those issues. The Legal Aid Society therefore filed a motion with the United States Court of Appeals for the Second Circuit requesting that the case be remanded for further consideration by the District Court. On September 15, 1972, the United States Court of Appeals for the Second Circuit dismissed the appeal "without prejudice to a renewal of the Application for Habeas Corpus in the District Court". On February 28, 1973, Judge Gagliardi again denied petitioner's application without a hearing. The United States Court of Appeals for the Second Circuit affirmed the dismissal of the petition, but solely on the ground that petitioner had not exhausted his State remedies *(United States ex rel. Gibbs v Zelker,* 496 F2d 991). Judge Timbers wrote: "We affirm the dismissal of the petition on the ground that Gibbs has not exhausted state remedies as required by 28 USC § 2254(b) and (c) (1970). Specifically, we hold that, since he did not raise in the New York state courts the same federal constitutional claims which he now urges upon the federal courts, the New York courts did not have a fair opportunity to consider those claims. *Picard v Connor,* 404 US 270, 276 (1971); *United States ex rel. Nelson v Zelker,* 465 F2d 1121, 1123-25 (2 Cir), cert denied, 409 US 1045 (1972)." He went on to write (p 993): "While we do not reach the merits of Gibbs' constitutional

claims in view of our holding that he has not exhausted state remedies, we do note in passing that at least the Fifth Amendment claim is a most serious one. Although *Miranda* is notably silent on the question of the fruits of proscribed interrogation, we see no tenable distinction between a question requesting Gibbs to tell what happened after the killing and a request by the police that he show them where the knife had been discarded. The latter would seem to be as much within the scope of the privilege against self-incrimination as the former, even recognizing as we do that the privilege protects only against the giving of testimony. The only indications in the papers before us that have any bearing upon exhaustion of state remedies are the affidavit of Gibbs in support of an unsigned order to show cause by which he sought to bring on a motion in the County Court to suppress the knife as evidence at trial, and Gibbs' brief in the New York Court of Appeals on his direct appeal. Our careful examination of both documents leaves us with the firm conviction that neither presented Gibbs' constitutional claims, which are now urged upon the federal courts, to the New York courts in such a manner as to afford the state courts a fair opportunity to consider them as required by *Picard* and *Nelson.*" Judge Timbers then said (pp 993–994): "The affidavit attached to the proposed order to show cause relies almost entirely on the asserted invalidity of Gibbs' detention under state law because the confinement order was signed by an acting police justice. There is no mention whatever of any Fifth Amendment claim such as that here raised, either denominated as such or spelled out in substance. The general assertion that 'the search and resulting seizure of the aforementioned knife was in violation of my constitutional rights' was an even less adequate presentation to the state courts of the claim we consider Gibbs' strongest than was the presentation which we found inadequate in *United States ex rel. Nelson v Zelker, supra,* 465 F2d at 1125, while acknowledging there that 'a general due process argument was made in the state court . . . .' *Ibid.* Gibbs' brief in the New York Court of Appeals—a most puzzling document—is likewise inadequate to exhaust state remedies on the issues here sought to be raised. We are told that this brief is supposed to have presented both the Fourth and Fifth Amendment issues to New York's highest court. True, it does talk about the signature of the detention order by an acting police justice who is said to have lacked authority to confine a material witness under New York law. The brief also makes some mention of lack of counsel and warnings—but all in the context of the requirements of New York law. The Court of Appeals could well have read the entire document and never have realized that a Fifth or Sixth Amendment claim was being made. Indeed, there is not a single reference to the *Miranda* decision in Gibbs' brief, although by the time the brief was filed *Miranda* had been on the books for five years. *In short, we hold that the federal constitutional claims which Gibbs now seeks to have adjudicated in the federal courts were never 'fairly presented to the state courts'"* (emphasis supplied). Relying upon the opinion of the Circuit Court of Appeals, petitioner applied for a writ of habeas corpus to the Rockland County Court.* The County Judge denied petitioner's application for a writ of habeas corpus because "the issues raised by the petitioner in his application for the Writ of Habeas Corpus have previously been considered and determined by the New York Court of Appeals." How the County Judge

---

* He probably could have saved himself a great deal of time and effort if he had applied directly to the New York Court of Appeals for an amendment of its remittitur in light of the opinion of the Circuit Court of Appeals.

could have reached that conclusion in the face of Judge Timbers' statement that petitioner "did not raise in the New York state courts the same federal constitutional claims which he now urges upon the federal courts, [and therefore] the New York courts did not have a fair opportunity to consider those claims" and that "we hold that the federal constitutional claims which Gibbs now seeks to have adjudicated in the federal courts were never 'fairly presented to the state courts'", I cannot fathom. Furthermore, the State Reporter's headnote of the case in the Court of Appeals (29 NY2d 754) states: "In the Court of Appeals defendant Gibbs argued that the trial court committed prejudicial error when it limited his counsel's examination of prosecution witnesses concerning the fact that he had been requested to, and did, submit to a lie detector test; that the verdict was against the weight of the credible evidence, and that he had been illegally detained as a material witness following the stabbing." I know that this court did not consider the *Miranda* issue when it affirmed petitioner's conviction; a reading of Gibbs' brief in the Court of Appeals and of the State Reporter's headnote shows that no such issue was raised there. It is undisputed that petitioner's brief in the Court of Appeals never mentioned the *Miranda* case —then five years old—nor any of the cases which followed in its wake. The *Miranda* case not having been cited, and the constitutional issue not having been raised, it is fair to conclude, as did Judge Timbers, that it was not considered or passed upon by our highest court. Having come to the conclusion that the bearing of the *Miranda* rule on petitioner's conviction was never considered by our State courts, I conclude that the writ of habeas corpus should have issued and been sustained for the reasons set forth by Judge Timbers in his opinion. To elaborate on that issue would only be a work of supererogation. I therefore dissent from the affirmance by the majority of this court of the judgment denying petitioner's application for habeas corpus relief and vote to grant such relief to him.

 