**Robert A. McNEIL**

v.

**Julius T. CUYLER, et al.**

Civ. A. No. 82–2372.

United States District Court, E.D. Pennsylvania.

Dec. 20, 1983.

1344

Robert A. McNeil, pro se.

Lee Ruslander, West Chester, Pa., for Dist. Atty. of Chester County.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Robert A. McNeil, a state prisoner, has brought this action for *habeas corpus* relief. On June 28, 1974, petitioner was convicted, in the Court of Common Pleas of Chester County, Pennsylvania, of first-degree murder, aggravated assault and battery, carrying a firearm without a license,[1] and carrying a concealed deadly weapon. He was sentenced to life imprisonment, and his post-trial motions were denied. Up to that point, petitioner had been represented by privately retained counsel.

Petitioner then filed a direct appeal to the Pennsylvania Supreme Court, with the aid of the Public Defender's Office. The Pennsylvania Supreme Court held, *inter alia,* that petitioner's claims of errors in the trial court's charge to the jury could not be considered, because trial counsel had not preserved those issues for review, inasmuch as he failed to object to the charge. *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975). However, the case was remanded for further proceedings to address petitioner's claims of ineffectiveness of counsel. Represented by still other counsel, petitioner sought relief under the Post-Conviction Hearing Act, 19 P.S. § 1180–1 *et seq.* ("PCHA"), asserting the ineffectiveness of trial counsel. The PCHA court determined that all claims of ineffectiveness had been waived, because those issues had not been raised on direct appeal, and petitioner failed to allege ineffectiveness on the part of his appellate counsel. This ruling was affirmed by the Pennsylvania Supreme Court. *Common-*

*wealth v. McNeil,* 479 Pa. 382, 388 A.2d 707 (1978).

Petitioner then filed a second PCHA petition, alleging ineffectiveness of trial counsel, counsel on direct appeal, and the first PCHA counsel. The PCHA court again denied relief. On appeal to the Pennsylvania Supreme Court, that court considered the merits of the ineffectiveness claims, and affirmed the denial of relief, two judges dissenting. *Commonwealth v. McNeil,* 497 Pa. 187, 439 A.2d 664 (1981). Petitioner then filed the present petition for *habeas corpus.*

The United States Magistrate, to whom the case was referred for Report and Recommendation, suggests that the petition should be dismissed for failure to exhaust state remedies. For several reasons, I am constrained to disagree.

It is clear that the principal thrust of the petition is the alleged ineffectiveness of petitioner's state court counsel. The ineffectiveness, all of which unquestionably have been presented to, and rejected by, the Pennsylvania Supreme Court. The petition also contains an eleventh charge, dealing with the admission in evidence of allegedly inflammatory photographs of the murder victim. There is an ambiguity as to whether the claim is that trial counsel's failure to preclude such evidence is an additional basis for deeming petitioner's trial representation ineffective, or that the admission of this evidence is an independent ground for overturning the conviction. The magistrate views it as a separate and independent ground for relief, but the petitioner appears to view it as simply another instance of his counsel's ineffectiveness. Under either view, however, I do not believe the presence of this claim renders this a case which, because of the presence of both exhausted and unexhausted claims, is subject to dismissal under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

---

1. The unlicensed firearm charge was later set aside by the Pennsylvania Supreme Court, for insufficiency of the evidence.

In the first place, all that is required is that the petitioner "fairly presented" the claim or its substantial equivalent to the state court. *Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971); *Anderson v. Harless*, —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). In petitioner's first amended PCHA petition, he averred that his trial counsel was ineffective "as evidenced by the fact that: ... counsel did fail to object to the introduction of photographic evidence offered by the Commonwealth ....."; and, in an addendum brief submitted to the Supreme Court of Pennsylvania in connection with the second PCHA petition, petitioner asserted "that the court errored [sic] in admitting the photographs into evidence" and that "trial counsel was ineffective for his failure to pursue the issue." The fact that the Pennsylvania Supreme Court did not specifically discuss this precise issue in its opinion is of no moment.

Moreover, petitioner is required only to exhaust his *available* state remedies. It is very clear that, even if it should be determined that the petitioner did not adequately raise this issue before the state courts, he would now be deemed to have waived the issue.

In the present case, it is unnecessary to dwell upon the question whether the waiver principle precludes this court from considering the merits of the claim relating to the photographic evidence, because, however interpreted, the claim is totally lacking in merit. All that needs to be decided is whether the inclusion of this claim in the petition requires· dismissal for failure to exhaust available state remedies; I am satisfied that it does not.

There is no conceivable basis for concluding that the trial court's discretionary ruling on the admission of photographic evidence, upheld on appeal, was a violation of petitioner's constitutional rights. And, on the issue of alleged ineffectiveness of trial counsel, it suffices to note that trial counsel succeeded in having .several photographs of the victim excluded. The performance of counsel is not rendered constitutionally ineffective by failure to obtain a favorable·ruling on every objection.

I turn now to the 10 remaining points, all of which were specifically addressed by the Pennsylvania Supreme Court. The first eight issues relate to the performance of trial counsel. Of these, several can be disposed of readily, without extended discussion.

The claim that trial counsel failed to consult with the petitioner adequately in advance of trial is foreclosed by state court findings to the contrary; needless to say, this court is bound by adequately supported findings of fact by the state courts, rendered after petitioner was afforded an adequate opportunity to develop the record. For essentially the same reason, petitioner's claims that trial counsel failed to pursue plea-bargaining or to advise him of the possibility of a favorable plea agreement, and the claim that petitioner was not advised that he could not be compelled to testify, cannot now be considered, in the face of post-trial testimony by petitioner's counsel, accepted as correct by the state courts, that the district attorney was unwilling to consider a plea agreement, and that petitioner was accurately informed of his right to testify or not.

Petitioner next claims that his counsel was incompetent because, in the course of petitioner's direct examination at trial his counsel elicited testimony concerning petitioner's prior convictions, whereas a reasonably competent lawyer should have realized that the fact of these earlier convictions could not have been brought out on cross-examination, or otherwise disclosed to the jury.

Petitioner is probably correct in his contention that such evidence would have been inadmissible. In the PCHA proceedings, however, the state courts determined that there was a rational basis for counsel's decision to bring out these previous convictions in the course of petitioner's direct examination. After the crime, petitioner fled to California, and was not apprehended until some 18 months after the event. He

sought to justify his flight on the basis of his fear that a black person such as himself could not expect to receive justice in the Chester County courts (rather than consciousness of guilt); and it was allegedly helpful to explain petitioner's earlier contacts with the criminal justice system as providing a reasonable basis for his belief. While one may well question the wisdom of this approach (there was no contention that petitioner had not killed the decedent, his defense was self-defense and/or manslaughter; the fact of flight would not seriously undermine that defense; and proof of his prior convictions would seem to have been unnecessary to support the asserted justification for flight), I am not disposed to second-guess the state courts on this issue.

That is, it is appropriate to view this case as one in which there was a rational basis for counsel's decision to present evidence of petitioner's previous convictions in the course of the direct examination. This incident can therefore provide no basis for a finding that trial counsel was constitutionally ineffective. There remains, however, a related problem further addressed below, arising from the fact that the trial judge charged the jury that petitioner's previous convictions should be considered in assessing his credibility (the 1962 conviction for aggravated assault and battery plainly did not affect credibility, and it is doubtful that the 1972 conviction for larceny of an automobile qualified either); petitioner's counsel did not object.

In order to assess the merits of the remaining challenges to the performance of trial counsel, it is necessary to review briefly the facts of the criminal case. The defendant shot and killed the decedent in the course of a bar room altercation. More than one shot was fired; one of the bullets struck and wounded another patron of the establishment (hence the separate charge for aggravated assault and battery).

It appears that, shortly before the shooting, the petitioner had been dancing with, and otherwise paying attention to, a young lady in whom the decedent had a romantic or proprietary interest of some sort. According to the prosecution witnesses, decedent was walking past the spot where petitioner was standing, adjacent to the bar, and either bumped into petitioner, or placed his hand on petitioner's shoulder; at any rate, there was a physical contact of some sort between the two men. Petitioner expressed his disapproval in no uncertain terms ("Don't touch me, man", or "Don't never touch me; I don't like to be touched"). The decedent allegedly assured petitioner that he had meant no offense, and sought to smooth over the dispute, but petitioner got up and put on his overcoat, in which there was a pistol. Petitioner drew his weapon and walked toward the decedent. The decedent was backing away, with his hands in the air, whereupon petitioner shot the decedent and fled from the scene.

The petitioner, on the other hand, testified that the decedent was well-known to him as having a reputation for violence, and had previously threatened the petitioner with death if he ever "fooled around" with any of decedent's "girls" in Chester (petitioner hailed from a nearby town). The decedent was angry and menacing; petitioner reasonably believed that his life was in danger, and drew his weapon in self-defense. He did not consciously pull the trigger, but concedes that he must have done so, and attributes that act to fear and panic.

Thus, if the jury believed the prosecution's version of the events, a verdict of either first- or second-degree murder would have been justified, and a verdict of voluntary manslaughter would not have been out of the question. If the jury believed all of the defendant's version, an acquittal on grounds of self-defense might have been conceivable, though perhaps unlikely; and a verdict of voluntary manslaughter based either upon a shooting in sudden passion without premeditation, or a shooting in the genuine but unreasonable belief that it was necessary in self-defense, could have resulted.

■ Having thus sketched the facts of the crime and the issues of significance at the trial, I turn to the remaining challenges to the performance of petitioner's trial counsel. The first is his failure to inform the jury that the decedent had previously been convicted of assault with intent to kill. It is undisputed that the decedent had in fact been so convicted, and that the appropriate record could easily have been obtained. The only 'explanation' offered by trial counsel is that he did not think it was necessary to prove the conviction, since the petitioner and some of his witnesses testified that they believed the decedent was dangerous, and that he had a reputation for violence.

In the circumstances of this case, where the sole basis for an acquittal was self-defense, and the only other hope of avoiding conviction of first-degree murder was to persuade the jury that the petitioner's fears were genuine, albeit unreasonable, it was manifestly a serious dereliction for defense counsel simply to ignore the decedent's criminal record, and thus to submit the crucial factual issues to the jury on the unsupported, arguably self-serving, testimony of the petitioner and his friends.

Petitioner's trial counsel did not submit any points for charge and lodged only a "general exception" to the charge as delivered. At the PCHA hearing, trial counsel attributed this course of action to his lack of awareness that the charge was objectionable in any respect.

The trial judge's charge does contain a lengthy, and presumably essentially accurate, exegesis of the law of first- and second-degree murder; a rather pointed charge on the subject of self-defense, with repeated emphasis on the obligation to retreat, the natural effect of which would have been virtually to rule out the self-defense claim; and an adequate, though not notably lucid, discussion of that form of voluntary manslaughter based upon "heat of passion" and "provocation". But the only reference in the entire charge to the possibility of a verdict of voluntary manslaughter based on the theory that petitioner did genuinely believe the shooting was necessary in self-defense, but his belief was unreasonable, is contained in the following two sentences:

"If [the killing] was committed under the influence of an uncontrollable fear of either death or great bodily harm caused by the circumstances but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense, the killing is manslaughter and not murder. Remember that the uncontrollable fear of death or great bodily harm, conceivable as existing, but not necessarily justified by the immediate circumstances, the killing is voluntary manslaughter."

It is to be emphasized that these sentences which bear directly upon what any reasonably competent defense lawyer would surely regard as a principal prong of the defense, followed the many pages of the charge devoted to defining murder, 11 pages on the (largely inapplicable) form of voluntary manslaughter, and 6 pages of (largely negative) discussion of self-defense.

After the jury had been deliberating for about two hours, they requested further instructions, as follows:

"Would you be so kind as to give us the following: What is the legal definition of voluntary manslaughter? Factors necessary for such."

The court thereupon redefined voluntary manslaughter, totally omitting any reference to the kind of manslaughter most relevant to the defense evidence, i.e., self-defense based on genuine but unreasonable apprehension of danger. The instruction included the following:

"... Voluntary manslaughter is the killing without malice but committed under the immediate influence of sudden passion. 'Passion' as here used means any of the emotions of the mind such as anger, rage, sudden resentment or terror, of such a degree of intensity as is sufficient to obscure temporarily the reason of the person affected and thus rendering the mind incapable of cool reflection. That is to say, there must be a sufficient cause of provocation, or a state

of rage or passion without time to cool, placing the actor beyond the control of his reason and suddenly impelling him to do the deed. The sudden passion, which is an element of voluntary manslaughter, must be due to a legally adequate provocation. Insulting or scandalous words are not sufficient cause of provocation nor are actual indignities to the person of a light or trivial kind. No words of reproach, abuse or slight assault are sufficient to reduce a homicide to manslaughter.

"Members of the jury, that is the definition of manslaughter and with that I'll ask you to again retire to your jury room."

Petitioner's trial counsel registered no objection, and sought no clarification or supplementation of this charge.

A few minutes later, the jury asked for further instructions on first and second-degree murder. After the trial judge delivered extensive additional instructions on those crimes, petitioner's counsel apparently (the side-bar proceedings are not transcribed) requested a further charge on voluntary manslaughter, but the trial judge refused to re-visit that subject.

As noted above, petitioner's trial counsel did not preserve for appellate review any of the questions raised by this sequence of events.

To summarize, then, we have a case in which the petitioner sought to justify the killing on the basis of self-defense. Although the victim had in fact been convicted of assault with intent to kill, the jury was not made aware of that fact. Trial counsel chose to rely on the unsupported reputation evidence of the defendant and certain of his witnesses. In rebuttal, the prosecution presented testimony to the effect that the victim had a good reputation as a peaceful and non-violent person; defense counsel did not even attempt to cross-examine these character witnesses on the basis of the victim's previous conviction. So far as the jury was aware, as between the petitioner and the victim, only the petitioner had a previous criminal record. The trial judge erroneously instructed the jury that petitioner's criminal record should be taken into account in assessing his credibility; petitioner's counsel did not object. The trial judge's initial charge to the jury virtually ignored the principal potential basis for a verdict of voluntary manslaughter, and the supplemental charge, in response to the jury's question, totally eliminated that prong of the defense. Yet petitioner's trial counsel made no attempt to call attention to any of these errors, and none was preserved for appellate review.

Viewing the record in its entirety, I am left with the firm conviction that the performance of petitioner's trial counsel fell far short of the quality of representation to which the petitioner was constitutionally entitled.

The petition for a writ of *habeas corpus* must therefore be granted. Actual issuance of the writ will be stayed for a period of 30 days, to permit an appeal, and, if an appeal is taken, for a further period until the appeal is finally decided. Issuance of the writ will, of course, be conditioned upon the failure of the Commonwealth to re-try the petitioner within 120 days after issuance.