Jose LAUREANO, Petitioner,

v.

Davis HARRIS, Superintendent, Green Haven Correctional Facility, Respondent.

No. 80 Civ. 2084.

United States District Court, S. D. New York.

Oct. 28, 1980.

Jose Laureano, pro se.

Mario Merola, Dist. Atty., Bronx County, New York City, for plaintiff; Billie Manning, Asst. Dist. Atty., New York City, Laurence J. Leibowitz, of counsel.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

Jose Laureano has advanced seven claims in support of his petition for habeas corpus relief. Although several of these claims are meritless, one is substantial and would normally warrant thorough consideration. But because petitioner has failed to exhaust his available state remedies, the petition must be dismissed without prejudice.

### I. *The State Court Proceedings*

Between December 1973 and March 1975, thirty–nine combined rape–sodomy–robbery–burglaries were committed in one South Bronx neighborhood. The crimes shared a common modus operandi. The perpetrator, armed with a knife or gun, would enter the victim's apartment through a bedroom window and would shout a Spanish vulgarity ("punyetta"). He would force the victim to engage in fellatio and sexual intercourse, then would rob her and burglarize the apartment. The perpetrator usually obscured his face with a handkerchief, although he occasionally pulled a turtleneck shirt over his face.

The two crimes involved in this petition (hereinafter referred to as the Cartagena and Rivera crimes) occurred on July 18 and August 6, 1974. Both followed the common pattern. Petitioner was identified by the two victims as the perpetrator and was arrested on October 18, 1974. While petitioner was in jail, fourteen more rapes occurred in the area, all following the same common pattern. The series of rapes ended on March 16, 1975, with the arrest of Jose Caraballo. Caraballo was charged with twelve separate incidents of rape, sodomy,

robbery, and burglary. Pursuant to a guilty plea to one rape charge, Caraballo was sentenced to between twelve and one-half and twenty-five years of imprisonment.

A hearing pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) was held, and the prosecution's identification evidence was found admissible. Petitioner was then tried for the Cartagena and Rivera crimes. The prosecution's case rested on the identification of petitioner by the two victims.

After the government's case, petitioner's counsel requested permission to call as witnesses Jose Caraballo and various members of the Bronx Sex Crimes Unit. Petitioner made an extensive offer of proof. He contended that the police officers would testify that Caraballo had been arrested as the pattern rapist in the South Bronx neighborhood, that Caraballo's modus operandi and physical appearance were extremely similar to those of the perpetrator of the Cartagena and Rivera crimes, and that in their opinion Laureano had not committed those crimes. Petitioner sought to call Caraballo to prove that he was the perpetrator and to permit the jury to compare Caraballo's appearance with Laureano's.

The trial judge refused to permit petitioner to call these witnesses. The court stated that it would not put Caraballo on the stand merely to have him exercise his Fifth Amendment rights. The Court ruled:

> Because of the anticipated evidence proffered by defendant, would be highly suggestive, unduly suggestive, unduly inflammatory and because it would lead to speculation on the trial jurors ... all of this anticipated evidence shall be excluded and that none of these witnesses may be called to the stand when we resume here in front of the jury.

Petitioner called one witness, a former roommate, who testified that petitioner had been at home when the crimes occurred.

On November 7, 1975, the jury convicted petitioner of rape, sodomy, two counts of burglary, robbery, attempted robbery, and menacing. The court sentenced him on January 7, 1976 to two consecutive terms of imprisonment of between eight and one-third and twenty-five years.

Petitioner filed a direct appeal. He contended that five reversible errors had occurred: the court should have granted his motion to sever the two crimes; the eyewitness testimony of the victim Cartagena should have been suppressed; the court should have permitted him to call Caraballo and the police officers as witnesses; the court should not have stated during the charge to the jury that the prosecution's evidence was uncontroverted; and the court should have instructed the jury differently as to his alibi testimony. The Appellate Division (First Department) affirmed petitioner's conviction without opinion. *People v. Laureano*, 54 A.D.2d 836, 387 N.Y.S.2d 1012 (1st Dep't 1976). Leave to appeal to the New York Court of Appeals was denied.

On May 30, 1977, petitioner moved in the trial court to set aside his conviction pursuant to New York Criminal Procedure Law § 440.10, contending that comments made by the presiding judge at the *Wade* hearing had denied him a fair trial. The court denied that motion on June 23, ruling that the issue should have been raised on direct appeal. Petitioner did not seek leave to appeal that ruling.

On June 6, 1978, Jose Caraballo confessed to the Cartagena and Rivera crimes. Caraballo wrote the confessions one month after arriving at Green Haven Correctional Facility, where petitioner was also incarcerated. Upon receipt of the confession, the Bronx District Attorney's Office reopened the case to determine whether Caraballo's confession was credible enough to cast doubt upon Laureano's guilt. An Assistant District Attorney interviewed Caraballo on July 12 and 13, 1978. Caraballo was represented by court-appointed counsel at the interview. The District Attorney's Office found Caraballo's confession untrustworthy for a variety of reasons and took no further action.

Petitioner, represented by the attorney who had represented him on appeal, moved

before the trial court pursuant to Criminal Procedure Law § 440.10(1)(g) to vacate the judgment and order a new trial because of the newly discovered evidence. The parties submitted written affirmations and presented oral arguments in September and October 1978. No hearing was held. On November 15, 1978, the court denied the motion to vacate. It found that Caraballo's confession was untrustworthy and that Caraballo possessed no independent knowledge of the crimes, having learned the details from Laureano. The court ruled that petitioner had not established a significant probability that the new evidence would result in a more favorable verdict at a new trial.

Petitioner, represented by counsel, appealed the denial of a new trial on December 19, 1978. The Appellate Division (First Department) affirmed the order without opinion. *People v. Laureano*, 73 A.D.2d 848, 422 N.Y.S.2d 273 (1st Dep't 1979). Leave to appeal to the Court of Appeals was denied. *People v. Laureano*, 48 N.Y.2d 1031, 425 N.Y.S.2d ——, 402 N.E.2d 151 (1980).

II. *Petitioner's Habeas Corpus Claims*

Petitioner filed his petition for a writ of habeas corpus, 28 U.S.C. § 2254, on April 16, 1980. He asserts seven grounds upon which the petition should be granted: (A) the trial court's refusal to provide a hearing on the motion to vacate because of new evidence denied petitioner due process; (B) the court's refusal to permit petitioner to call Caraballo and certain police officers denied him his constitutional right to present witnesses in his defense; (C) the court's charge to the jury was incorrect and prejudicial; (D) petitioner's guilt was not established beyond a reasonable doubt; (E) the denial of petitioner's motion to sever the Cartagena and Rivera crimes was unconstitutional; (F) the trial judge denied petitioner due process by failing to recuse himself from ruling on the motion to vacate the judgment; (G) the pretrial identification procedures were unduly suggestive and resulted in the admission at trial of improper identification evidence.

■ Pursuant to 28 U.S.C. § 2254(b), a federal court reviewing a habeas petition can address only those constitutional claims as to which petitioner has exhausted available state remedies. The Supreme Court had held that, in order to exhaust state remedies, a petitioner must fairly present to the state court the same claim that is the basis for the habeas petition. *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). The Court of Appeals for the Second Circuit has vigorously enforced this requirement, holding that "fair presentation" requires that the issue be presented in the context of a federal constitutional claim. *Gayle v. LeFevre*, 613 F.2d 21, 22–23 (2d Cir. 1980). "Where a petitioner has raised his claim in the state court solely as a violation of state statute and not on the basis of an invasion of his federal constitutional rights, dismissal by the federal courts is mandated." *Wilson v. Fogg*, 571 F.2d 91, 92 (2d Cir. 1978). *See generally Sabino v. LeFevre*, 490 F.Supp. 183 (S.D.N.Y.1980), *aff'd per curiam*, 630 F.2d 919 (2d Cir. 1980).

■ All of petitioner's claims here must be dismissed for failure to exhaust. In his direct appeal of the conviction, petitioner raised claims of error similar to those in his petition denominated "(B)" (exclusion of defense witnesses), "(C)" (prejudicial jury instructions), and "(E)" (refusal to sever the charges). Petitioner's briefs in his direct appeal demonstrate, however, that the state courts were not fairly presented with these three constitutional claims, for petitioner did not assert that the alleged errors had violated his federal constitutional rights.

■ Claim "(G)" (unduly suggestive pretrial identification) presents a less stark instance of failure to exhaust. Point II of petitioner's brief on direct appeal was: "The eye witness testimony of Mrs. Cartagena should have been suppressed because the photographic identification procedure and the in personam line–up procedures were suggestive, improper, and tainted." *People v. Laureano*, Brief for Defendant–Appellant at 7. Petitioner argued that "the initial photographic identification . . . was tainted and that the subsequent photographic and in personam line–ups were the

fruits of the poisoned tree. The initial pre-trial confrontation was both impermissibly suggestive and conducive to irreparable mistaken identification." *Id.* at 8. Petitioner cited without discussion one Supreme Court and one United States Court of Appeals case. The portion of claim (G) that involves the Rivera identification was not raised at all in the state court. But even as to the portion that involves the Cartagena identification, petitioner did not explicitly claim that any specific federal constitutional right was violated. The prosecution's brief on appeal concentrated exclusively on the validity of the Cartagena identification under state law. It appears, therefore, that the state courts were not fairly presented with this claim under the Second Circuit standard.[1]

■ In addition, petitioner failed to file a postjudgment motion pursuant to Criminal Procedure Law § 440.10 seeking to vacate his conviction on federal constitutional grounds with respect to claims (B), (C), (E), and (G).[2] He has thus failed to exhaust available state remedies with respect to these claims. Petitioner has also failed to exhaust claim (D) (guilt not proven beyond reasonable doubt), for he has not presented this claim to the state courts on appeal or in postjudgment motions.

■ The two remaining claims involve the disposition of the petitioner's motions to vacate and for a new trial because of newly discovered evidence. Claim (A) (failure to grant a hearing on the motion to vacate) was presented to the state courts, but not as a constitutional claim. Moreover, petitioner's counsel had waived his right to a hearing during oral argument, conceding

that the motion could be decided on the basis of the papers submitted (including the transcript of the Caraballo interview). Similarly, claim (F) (failure of trial judge to recuse himself on motion to vacate) was not presented to the state courts as a federal constitutional claim. Moreover, petitioner had not requested that the judge recuse himself. Consequently the exhaustion requirement precludes consideration of any of petitioner's claims. The state procedural waivers as to these claims also bar review. *See generally Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ Ordinarily, no discussion of the merits of petitioner's claims would be necessary. In this case, however, petitioner is not represented by counsel, and the several clearly unmeritorious arguments he has raised may obscure the relative merit of his claim (B), involving the trial court's refusal to permit petitioner to call Caraballo and members of the Bronx Sex Crimes Unit as witnesses. This testimony, given petitioner's defense and offer of proof, would have been highly relevant. Caraballo subsequently confessed to the crimes for which petitioner was convicted. Even if Caraballo would have refused to testify, the court could have arranged for the jury to compare his appearance with petitioner's, which the record shows is strikingly similar. Such an appearance by Caraballo would not have constituted testimony and therefore could not have been itself barred by Caraballo's invocation of the Fifth Amendment, which could have been placed on the record outside the jury's presence. Moreover, the police officers allegedly would have testified that they believed that Caraballo, not Laureano, had committed these particular

---

1. Even if petitioner had exhausted the portion of claim (G) that involves the Cartagena identification, that claim would likely fail on the merits. 28 U.S.C. § 2254(d) requires that a state court's findings after a hearing be presumed correct absent assertion of any of eight specified deficiencies. Petitioner has failed to assert any of the requisite deficiencies. Moreover, the state court held after a *Wade* hearing that the Cartagena identification had been fairly conducted and had not violated petitioner's rights. Petitioner appears unable to bear his burden of establishing by convincing evidence that the findings of fact were erroneous. *See*

*Alexander v. Smith,* 582 F.2d 212, 217 (2d Cir.), *cert. denied,* 439 U.S. 990, 99 S.Ct. 589, 58 L.Ed.2d 664 (1978); *Tanner v. Vincent,* 541 F.2d 932, 937 (2d Cir. 1976), *cert. denied,* 429 U.S. 1065, 97 S.Ct. 794, 50 L.Ed.2d 782 (1977).

2. Petitioner did file a section 440.10 motion related to claim (G), contending that comments made by the presiding judge at the conclusion of the *Wade* hearing ("I'm sure he did it. But it's for the jury to decide.") denied him a fair trial. This claim was distinct from defects in the Cartagena identification.

crimes. Petitioner's defense that he was innocent would have been buttressed by evidence that the "pattern rapist" was guilty of these similar crimes.

The trial judge's refusal to permit petitioner to call any of these witnesses, because "the anticipated evidence . . . would be highly suggestive, unduly suggestive, unduly inflammatory and because it would lead to speculation on the trial jurors," seems erroneous on its face. The evidence would have been "highly suggestive" of the possibility that Caraballo had committed the rapes and would have led "to speculation" as to Laureano's guilt. These are precisely the issues that were before the jury, and the trial judge's ruling essentially denied petitioner an opportunity to establish that a reasonable doubt existed as to his guilt. After this claim is properly presented to the state courts, it will be appropriate to consider it here if relief is not obtained.

The petition is dismissed for failure to exhaust state remedies. 28 U.S.C. § 2254(b).

SO ORDERED.