**Terry BALL, Petitioner,**

v.

**Daniel SENKOWSKI, Warden, Respondent.**

**Nos. 93 Civ. 0005, 93 Civ. 0802 and 93 Civ. 1020.**

United States District Court, N.D. New York.

Nov. 18, 1995.

Terry Ball, pro se.

Amy Schallop, Assistant Attorney General, Office of Attorney General, State of New York, Department of Law, Albany, NY, for respondent.

## OPINION AND ORDER

KOELTL, District Judge: [1]

Petitioner Terry Ball brings this federal habeas corpus proceeding to challenge the lawfulness of his incarceration.[2] Ball pleaded guilty to the crime of kidnapping in the first degree and was sentenced to an indeterminate term of fifteen years to life imprisonment by the New York State Supreme Court, Oneida County on January 15, 1988. He now alleges that he was coerced into giving information to both his attorney and the district attorney and that his guilty plea was coerced as well.

### I.

On November 9, 1981, nine-year old Johnnie Lee Bell disappeared while running an errand at a store near his home in Utica, New York. Two months later, the boy was found dead in the basement of an apartment building in Utica, shot once in the head.

On November 28, 1986, Terry Ball was arrested in Utica for the crime of menacing. (7/30/87 Tr. at 13.) Detectives used this opportunity to question Ball about the Bell slaying. (7/30/87 Tr. at 54.) After informing Ball of his *Miranda* rights, two Utica detectives questioned him for three hours, from approximately 11:00 p.m. to 2:00 a.m. (7/30/87 Tr. at 18.) Throughout the course of this interview, Ball denied any involvement in the Bell slaying. (7/30/87 Tr. at 18.)

At approximately 2:00 a.m., Ball suggested taking a polygraph examination to verify his statements. (7/30/87 Tr. at 18, 88.) Ball was uncertain, however, whether he should take the exam and asked if he could call his mother. (7/30/87 Tr. at 19.) The detectives permitted Ball to speak with his mother by telephone at approximately 2:20 a.m. (7/30/87 Tr. at 19.) Ball was accompanied by one of the detectives, Lieutenant Mazza, while he spoke on the telephone. (7/30/87 Tr. at 19–20.) In another office, Sergeant Taurisano, the other detective conducting the interview, picked up a phone on the same extension and, by placing a microcassette recorder against the receiver, proceeded to record the conversation. (7/30/87 Tr. at 19.) With Lt. Mazza listening in the same room, Ball repeatedly asked his mother and aunt to find an attorney for him. (App. at A15, 17.)

Following the phone call, Lt. Mazza asked Ball whether he wanted to speak to the public defender. (7/30/87 Tr. at 83.) Ball refused, adding that his mother or aunt would speak to an attorney in the morning. (7/30/87 Tr. at 83–84.) With Ball's consent, Lt. Mazza then contacted Frank Sack, a local polygraph examiner, and scheduled an appointment for 3:00 a.m. that morning at Sack's office. (7/30/87 Tr. at 23.)

At 3:31 a.m., Ball signed a "consent form," and Sgt. Taurisano once again informed him of his *Miranda* rights. (App. at A20–22.) Sack then began a two-hour examination,

---

1. Pursuant to the authorization of Chief Judge Jon O. Newman of the Court of Appeals for the Second Circuit, this case was transferred from the Northern District of New York to this Court for the purpose of disposing of the pending motion by order of Chief Judge Thomas J. McAvoy of the Northern District of New York.

2. Ball brought three separate habeas corpus proceedings challenging the conviction which were consolidated under No. 93 Civ. 0005. Order dated January 20, 1994.

during which Ball denied any involvement in the murder of Johnnie Lee Bell and stated that he suspected that an individual named Steve Hendricks committed the homicide. (8/25/87 Tr. at 5.)

At 6:02 a.m., Sack completed the interview. (8/25/87 Tr. at 8.) Sack informed Ball that he had been "deceptive" during the interview. (8/25/87 Tr. at 5.) Ball left with the officers, but moments later returned to Sack's office and orally admitted to being present when the boy was killed. (7/30/87 Tr. at 36–37.)

During a second interview with Sack, Ball described the killing in detail. (7/30/87 Tr. at 37.) Ball stated that he and Steve Hendricks first spotted Johnnie Lee Bell walking alone down the street. Ball said the pair brought him to the cellar of a nearby home where Steve Hendricks shot the boy with Ball's gun. (*Id.*) Ball also admitted to choking the boy into unconsciousness just prior to the shooting. (7/30/87 Tr. at 37; App. at A22.)

The officers accompanied Ball back to Utica Police Headquarters, where Ball again received his *Miranda* rights. At 7:02 a.m., he gave a written statement in which he reaffirmed his admission that he was present at the murder, but he again denied committing it. (App. at A22.) Ball was arraigned later that morning between 9:00 and 10:00 a.m. (7/30/87 Tr. at 65.)

On February 11, 1987, an Oneida County Grand Jury filed an indictment charging Ball with, *inter alia*, two counts of murder in the second degree and one count of kidnapping in the first degree in connection with the murder of Johnnie Lee Bell. (Oneida County Grand Jury Indictment No. 87–33.) Subsequently, Ball pleaded guilty to kidnapping in the first degree in full satisfaction of the indictment. (11/16/87 Tr. at 13.)

On December 21, 1987, one of Ball's inmates at the jail filed a motion, allegedly made on behalf of Ball, to allow ·him to withdraw his guilty plea. Ball withdrew the motion, however, when he appeared for sentencing. (App. at A177.) On January 15, 1988, the New York State Supreme Court,

Oneida County sentenced Ball in accordance with the terms of the plea bargain to an indeterminate term of fifteen years to life imprisonment on. the kidnapping charge. (11/16/87 Tr. at 19, 94.)[3]

Ball appealed the judgment of conviction to the Appellate Division, Fourth Department. He raised three claims for appellate review:

(1) His statements to the Court during the plea allocution, in which he maintained his innocence of the crime of kidnapping and insisted upon lying about what had occurred, raised a substantial doubt as to the voluntariness of his plea;

(2) His waiver of his right to appeal the denial of his pretrial suppression motion should not be enforced because the record showed that he did not understand the nature of the waiver and because of the involuntary character of the proceedings; and

(3) Because he made several allegedly unequivocal requests for counsel before giving his statements to the authorities, and because those requests were allegedly ignored by the authorities who proceeded to obtain statements even though no counsel was provided or was present, his statements should have been suppressed.

The Appellate Division unanimously affirmed the judgment of conviction. *People v. Ball*, 174 A.D.2d 991, 572 N.Y.S.2d 151 (4th Dep't 1991). Petitioner's application for leave to appeal to the New York Court of Appeals was denied. *People v. Ball*, 79 N.Y.2d 824, 588 N.E.2d 102, 580 N.Y.S.2d 204 (1991).

In his federal petition, Ball stated four grounds for relief. In his first two grounds for relief, Ball claims that he was coerced into giving information to his attorney and the District Attorney. In grounds three and four, Ball alleges that he was coerced into pleading guilty and that he should be granted a new trial with a new jury and a new attorney. Because the plaintiff has not ex-

---

**3.** At the January 15, 1988 sentencing, Ball was also sentenced to an indeterminate term of imprisonment of three and one-half to seven years on the unrelated charge of promoting prison contraband. (App. at A184.) This sentence was to run concurrently with his sentence on the kidnapping charge.

hausted his available State court remedies with respect to these claims, the respondent's motion to dismiss the petition is granted.

## II.

The Supreme Court "has long held that state prisoners must exhaust state remedies before obtaining federal habeas relief." *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 9, 112 S.Ct. 1715, 1719, 118 L.Ed.2d 318 (1992); *see also Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). This exhaustion requirement is codified in 28 U.S.C. § 2254, which provides in part:

> (b) An application for writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

In the present case, the petitioner's claims are based on allegations of coercion that are not determinable from the record. Under New York law, claims alleging improper or prejudicial conduct outside the record are not reviewable on direct appeal and must be raised by way of a motion pursuant to New York Criminal Procedure Law § 440.10.[4] *See Caballero v. Keane*, 42 F.3d 738, 740–41 (2d Cir.1994); *Laureano v. Harris*, 500 F.Supp. 668, 672 (S.D.N.Y.1980). Plaintiff has not filed a motion with the New York State Supreme Court, Oneida County under CPL § 440.10 to litigate his claims of coercion. Accordingly, because the petitioner

has not exhausted his available state court remedies and is not procedurally barred from doing so, his petition must be dismissed.

For the reasons stated above, the petition for a writ of habeas corpus is dismissed without prejudice for failure to exhaust state court remedies.

**SO ORDERED.**

court or a prosecutor or a person acting for or in behalf of a court or a prosecutor; or ...

(h) The judgment was obtained in violation of a right of the defendant under the constitution of the state or of the United States.

---

**4.** CPL § 440.10 provides:

1. At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that ...

(b) The judgment was procured by duress, misrepresentation or fraud on the part of the