**Edward COLVILLE, Petitioner,**

v.

**Charles SCULLY, Respondent.**

**No. 81 Civ. 5844.**

United States District Court, S. D. New York.

Feb. 17, 1982.

Edward Colville, pro se.

Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, N. Y., for respondent; Frank L. Priolo, Asst. Dist. Atty., of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Petitioner, now serving concurrent sentences of seven and a half to fifteen years following his conviction by a jury of the crimes of burglary in the second degree, grand larceny in the third degree, and crim-

inal mischief in the fourth degree, seeks a federal writ of habeas corpus to void the judgment of conviction upon claims of violation of his federal constitutional right to due process of law and adequate legal counsel. The conviction was affirmed upon appeal by the Appellate Division, Second Department,[1] and leave to appeal to the Court of Appeals was denied.[2]

The petitioner, appearing pro se, grounds his claims to habeas corpus relief upon (1) the alleged insufficiency of the evidence to sustain the guilty verdict; (2) ineffective assistance of counsel upon the trial; and (3) error and abuse of discretion by the trial court—the grounds urged in the state court for reversal of the conviction.[3]

I. *The Alleged Insufficiency of Evidence*

The crimes of which petitioner was convicted centered about a burglary which occurred between December 31, 1977 and the early morning of January 1, 1978 while the owner of a house and the members of his family were elsewhere celebrating the New Year.

The constitutional issue to be decided with respect to this claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[4] Petitioner's attack is two-fold—it centers about fingerprint evidence and the alibi testimony of his witnesses. When the burglary was discovered and reported by the owner, the police made an immediate investigation of the premises during which latent fingerprints were "lifted" or removed from a newly broken kitchen storm window which was deemed the point of entry of the burglar. The investigators also found in a ransacked bedroom a previously intact envelope which apparently had been torn open by the burglar. Fingerprints were also removed from this envelope. Upon comparison of petitioner's fingerprints which were taken after his arrest with the latent prints taken from the storm window and the torn envelope, an expert at the trial testified that in his opinion the prints on the storm window and the torn envelope were those of petitioner. The People's proof established that he had never been in the burglarized home with the knowledge or consent of the family.

Petitioner denied the burglary and advanced an alibi defense. With respect to the fingerprint evidence, he testified that his prints on the envelope were, in effect, the result of trickery practiced by a detective who had questioned him in the early hours of January 1, 1978 soon after the burglary had been reported. Petitioner testified that during the course of interrogation the detective pushed the envelope and another item towards him whereupon he "touched them not realizing the ramifications of doing so." The detective, in rebuttal, testified, contrary to petitioner's version, that he first went to the burglarized premises only after questioning the petitioner and at that time the fingerprints were discovered and lifted. Thus, as to this matter, a sharp issue of fact existed. Petitioner's version, if not accepted, suggested a false exculpatory statement. Upon petitioner's appeal it was argued, as he does here, that "there was a serious question as

1. 74 A.D.2d 928, 426 N.Y.S.2d 94 (1980).

2. 50 N.Y.S. 1061, 431 N.Y.S.2d 1046, 410 N.E.2d 755 (1980).

3. A reading of petitioner's brief submitted to the Appellate Division indicates that the only claim advanced on constitutional grounds (and this is not clearly articulated) was the ineffectiveness of counsel at the trial. *Cf. Krische v. Smith*, 662 F.2d 177 (2d Cir. 1981). However, the state has raised no issue of petitioner's failure to exhaust state remedies as required by 28 U.S.C. § 2254; *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Since this Court has reviewed the entire record and the briefs submitted to the Appellate Division, it is desirable in the interests of judicial economy to pass upon all claims presented upon the merits. *Lopez v. Smith*, 515 F.Supp. 753, 754 (S.D.N.Y.1981); *Sams v. Warden*, 507 F.Supp. 141 (S.D.N.Y.1981); *Reese v. Bara*, 479 F.Supp. 651, 653 (S.D.N.Y.1979). *But see Daye v. Attorney General of the State of New York*, 663 F.2d 1155 (2d Cir. 1981).

4. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

to when and the manner in which the fingerprints were placed upon the exhibits in question."[5] Which of the contradictory versions to accept was, of course, for jury determination. The jury's verdict indicates it was resolved against petitioner. Moreover, petitioner offers no comment with respect to the expert's testimony that the fingerprints found on the kitchen storm window were his.

To support his alibi defense, petitioner, in addition to his own testimony, offered that of his fiancee and a number of other witnesses. She and the others in substance testified that petitioner was in their presence at one bar or a nearby adjacent bar celebrating New Year's Eve during the entire period of the alleged burglary. These bars were located two-tenths of a mile from the burglarized premises. The testimony of several of the alibi witnesses was in conflict on some matters. In addition, a police officer gave testimony which, if accepted, tended to negate the force of the alibi testimony. It is clear that with respect to the fingerprint issue and the alibi defense, the jury found the state's witnesses credible.

It is true the case against the defendant was based essentially upon circumstantial evidence,

> [b]ut circumstantial evidence is of no less probative value than testimonial evidence. Given either type of evidence, a jury, if properly instructed as to reasonable doubt, is not foreclosed from drawing upon its common experience with persons and events. The question is always whether the jury may rationally and logically infer the ultimate fact to be proved from basic facts, whether established by circumstantial or testimonial evidence, and the surrounding circumstances of the case.[6]

■ The Court concludes, upon a detailed study of the trial record that, viewed in the light most favorable to the prosecution, a rational fact finder could readily find that the state has established the essential elements of each charge beyond a reasonable doubt.

## II. Denial of Adjournment to Call a Witness

■ The petitioner next contends he was denied "the right to call an essential witness," his brother, when the trial court refused a continuance of the trial. The witness' purported testimony was to give further support to the alibi defense. Petitioner alleges that although the brother assured his lawyer he would appear, he failed to show up at the designated time because he had "car trouble." Five witnesses had already been heard in support of the alibi; such testimony would have been cumulative, which alone would have been sufficient to warrant denial of a postponement of the trial. Additionally, it appears that the trial continued for a substantial period after the requested adjournment had been denied which afforded ample time to produce the brother and still he did not appear by the time the trial was concluded on both sides. The matter of continuance of the trial was within the court's discretion and the failure, upon the circumstances here presented, to grant the application does not rise to the level of a constitutional violation of petitioner's rights.

## III. Ineffectiveness of Trial Counsel

■ Finally, there is what now appears to be a common charge when a jury finds a defendant guilty—that the adverse verdict was due solely to the incompetence of his lawyer which resulted in a denial of his constitutional right of adequate legal representation. This "hindsight" or "Monday morning quarterbacking" stricture of what counsel did or failed to do during the trial, in this case, flies in the face of a vigorous defense conducted by petitioner's trial counsel. Indeed, a reading of the trial record compels the conclusion that if the applicable

5. Brief for Appellant at 4.

6. *United States v. Bowles*, 428 F.2d 592, 597 (2d Cir.), *cert. denied*, 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970); *see also United States v. Glasser*, 443 F.2d 994 (2d Cir.), *cert. denied*, 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971).

standard is deemed to be "reasonable competence" of the attorney rather than "a farce and mockery of justice" and "shock the conscience of the court" standard consistently applied in this Circuit for more than three decades,[7] then the petitioner was not denied his right to effective representation. The claimed deficiencies of counsel, whether viewed singly or collectively, do not detract from the fact that petitioner had the benefit of reasonably competent counsel and was afforded a fundamentally fair trial. He was not entitled to a flawless trial.

The petition for writ of habeas corpus is dismissed. So ordered.

---

7. *United States v. Helgesen*, 669 F.2d 69 (2d Cir. 1982); *United States v. Aulet*, 618 F.2d 182, 187 (2d Cir. 1980); *Indiviglio v. United States*, 612 F.2d 624, 627 (2d Cir. 1979), *cert.* *denied*, 445 U.S. 933, 100 S.Ct. 1326, 63 L.Ed.2d 768 (1980); *United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).